1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    AMERICAN MULTI-CINEMA INC., a              No.  2:16-cv-01066-TLN-KJN
      Missouri corporation,
12
                   Plaintiff,
13                                                **ORDER GRANTING IN PART AND
            v.                                    DENYING IN PART DEFENDANT'S
14                                                MOTION FOR SUMMARY JUDGMENT
      MANTECA LIFESTYLE CENTER, LLC,              AND DENYING PLAINTIFF'S MOTION
15    a Delaware limited liability company,       FOR SUMMARY JUDGMENT**

16                 Defendant.

17

18          This matter is before the Court pursuant to Defendant Manteca Lifestyle Center, LLC's

19    ("Defendant") and Plaintiff American Multi-Cinema Inc.'s ("Plaintiff") Cross-Motions for

20    Summary Judgment.  (ECF Nos. 54, 52.)  The parties both oppose each other's motions (ECF

21    Nos. 57, 58) and both filed replies (ECF Nos. 59, 60).  For the reasons set forth below,

22    Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part, and

23    Plaintiff's Motion for Summary Judgment is DENIED.

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

                                               1

1    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

2         Defendant is the owner of a shopping center in Manteca, California, known as The

3    Promenade Shops at Orchard Valley ("Shopping Center").  (ECF No. 52 at 7.)  Defendant and

4    Kerasotes Showplace Theaters, LLC ("Kerasotes") finalized and executed a commercial lease

5    ("Lease") on August 17, 2007.  (ECF No. 54-1, Plaintiff's Statement of Undisputed Facts

6    ("PSUF"), at ¶ 1.)  Section 7.1 of the Lease, as relevant here, states:

7
8             . . . Tenant's proportionate share of the taxes, user fees, land use extractions, and
              other public charges, expenses, fees, or levies now or hereafter assessed against the
9             real estate included in the Leased Premises by any governmental authority or any
              school or agricultural, utility, drainage, or other improvement or special assessment
10            district during the Lease Term, all of which are herein collectively referred to as
              "Property Taxes" . . .

11
              "Property Taxes" shall include any special assessment resulting, in whole or in part,
12            from capital improvements for the entire tax district, including Community
              Facilities District, of which the Shopping Center is a part and which benefit the
13            Shopping Center.  Tenant's proportionate share of Property Taxes shall equal the
              product of the total Property Taxes due with respect to the land and improvements
14            included in the applicable tax parcel (the "Tax Parcel") multiplied by a fraction, the
              numerator of which shall be the [gross leased area] of the Leased Premises and the
15            denominator of which shall be the [gross leased area] of all improvements included
              in the Tax Parcel.
16

17   (*Id.* at ¶ 2.)  The terms "applicable tax parcel" or "Tax Parcel" are not defined anywhere in the

18   Lease.  (*See* ECF No. 1-1.)  The Lease contains an integration clause, and it was also modified

19   after its creation by four subsequent Modification Agreements.  (ECF No. 52-2, Defendant's

20   Statement of Undisputed Facts ("DSUF"), at ¶ 8.)  In October 2008, Kerasotes began operating a

21   theater in the Shopping Center.  (ECF No. 54-1, PSUF, at ¶ 4.)  In 2010, Plaintiff acquired

22   Kerasotes and became the tenant under the Lease.  (*Id.* at ¶ 5.)

23        On May 10, 2007, prior to Defendant and Kerasotes finalizing the Lease, Defendant

24   entered into a Development Agreement with the City of Manteca.  (ECF No. 52-2, DSUF, at ¶

25   11.)  The Development Agreement was regarding the creation of a Community Facilities District

26   ("CFD"), a special district created by a local government to enable bonds to be issued to finance

27   construction of public improvements benefiting the district.  (ECF No. 52-2, DSUF, at ¶¶ 12–13;

28

2

ECF No. 54 at 7.)  While the plan was to establish the CFD by the end of 2008, the CFD was not established until May 2013.  (ECF No. 52-2, DSUF, at ¶ 13; ECF No. 54-1, PSUF, at ¶ 19.)

Plaintiff states from 2010, when it became the tenant under the Lease, until 2013, when the CFD was established, Defendant billed Plaintiff 17 percent of the property taxes on the Shopping Center.  (ECF No. 54-1, PSUF, at ¶ 25.)  Plaintiff maintains Defendant calculated its property taxes by using the entire Shopping Center as the "Tax Parcel" in the Lease.  (*Id.* at ¶ 12.)  In 2009, the County remapped and divided the Shopping Center into 26 smaller parcels. (*Id.* at ¶ 13.)  Parcel 41 contained the entirety of Plaintiff's leased area.  (*Id.* at ¶¶ 23, 26.)  Once the CFD taxes became effective in 2013, Defendant began calculating Plaintiff's share of property taxes by using Parcel 41 as the "Tax Parcel."  (*Id.* at ¶ 26.)  Plaintiff states its new share was 67 percent of the entire CFD assessment.  (*Id.* at ¶ 24.)  Plaintiff alleges Defendant breached the Lease by invoicing Plaintiff for a disproportionate share of the CFD taxes.  (ECF No. 54 at 9.)

On May 19, 2016, Plaintiff filed a Complaint in this Court, alleging claims for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) declaratory relief in the form of a judgment from this Court stating the "Tax Parcel" refers to the entire Shopping Center and the apportionment of taxes under the Lease is determined by reference to the "Tax Parcel," and (4) constructive trust and unjust enrichment.  (ECF No. 1 at 6–9.)  The parties filed the instant cross-motions for summary judgment on January 25, 2018.  (ECF Nos. 52, 54.)

## II.    STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof

1    at trial on a dispositive issue, a summary judgment motion may properly be made in reliance

2    solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at

3    324 (internal quotation marks omitted).  Indeed, summary judgment should be entered against a

4    party who does not make a showing sufficient to establish the existence of an element essential to

5    that party's case, and on which that party will bear the burden of proof at trial.

6         If the moving party meets its initial responsibility, the burden then shifts to the opposing

7    party to establish that a genuine issue as to any material fact does exist.  *Matsushita Elec. Indus.*

8    *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv.*

9    *Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual dispute,

10   the opposing party may not rely upon the denials of its pleadings, but is required to tender

11   evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

12   support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must

13   demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the

14   suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that

15   the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for

16   the nonmoving party.  *Id*. at 251–52.

17        In the endeavor to establish the existence of a factual dispute, the opposing party need not

18   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

19   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

20   trial."  *First Nat'l Bank*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is to

21   'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

22   trial.'"  *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963

23   amendments).

24        In resolving the summary judgment motion, the court examines the pleadings, depositions,

25   answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed.

26   R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence

27   of the opposing party is to be believed, and all reasonable inferences that may be drawn from the

28   facts pleaded before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S.

4

at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

obligation to produce a factual predicate from which the inference may be drawn.  *Richards v.*

*Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.

1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party

"must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational trier of

fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id*. at 587.

### III.  ANALYSIS

Defendant moves for summary judgment as to all of Plaintiff's claims and requests

attorneys' fees.  Plaintiff moves for summary judgment as to its breach of contract, breach of the

covenant of good faith and fair dealing, and declaratory relief claims.

### A.  Breach of Contract

Defendant moves for summary judgment on Plaintiff's breach of contract claim for three

distinct reasons: (1) Defendant did not breach the Lease's Representation and Warranty Clause;

(2) the definition of the Lease term "Tax Parcel" refers to Plaintiff's leased area alone; and (3)

the voluntary payment doctrine stipulates that Plaintiff waived its breach of contract claim by

waiting 18 months to sue.  (*See* ECF No. 52.)  Plaintiff moves for summary judgment on this

claim for one reason: the definition of the aforementioned Lease term "Tax Parcel" is the entire

Shopping Center, not Plaintiff's leased area alone.  (*See* ECF No. 54.)  The Court will address

the parties' arguments in turn.[1]

"A lease is both a contract and a conveyance; under such agreement there are rights and

obligations based upon the relationship of landlord and tenant as well as upon the contractual

promises."  *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 655 (2011) (citing *Spinks v. Equity*

*Residential Briarwood Apts.*, 171 Cal. App. 4th 1004, 1031 (2009)).  The general rules of

contract interpretation are applicable to the interpretation of a lease.  Cal. Civ. Code §§ 1635–62;

---

[1]     Because the parties make similar arguments as to the definition of the Lease term
"applicable tax parcel" in their respective motions, as well as their oppositions and replies thereto,
the Court will address the parties' overlapping arguments as to this issue together.

*Medico-Dental Bldg. Co. of Los Angeles v. Horton & Converse*, 21 Cal. 2d 411, 418–19 (1942). A breach of contract claim "requires pleading of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach, and damage to plaintiff resulting therefrom."[2] *Munoz*, 195 Cal. App. 4th at 655.  To plead breach, "[t]he complaint must identify the specific provision of the contract allegedly breached by the defendant." *Becton, Dickinson and Company v. Cytek Biosciences, Inc.*, 2020 WL 1877707, at *3 (N.D. Cal. 2020) (citing *Donahue v. Apple, Inc.*, 871 F. Supp. 2d 913, 930 (N.D. Cal. 2012); *Progressive West Ins. Co. v. Super. Ct.*, 135 Cal. App. 4th 263, 281 (2005)).  If a complaint fails to provide notice to defendants of "the facts and circumstances surrounding the alleged breach . . . it fails to give fair notice to defendants of the actions of which they are accused, in direct contravention of Rule 8." *Id.*

i.      *Representation and Warranty Clause*[3]

Defendant first moves for summary judgment on the grounds that it did not breach the Lease's Representation and Warranty Clause.  (ECF No. 52 at 20.)  In support of its argument, Defendant asks the Court to consider parol evidence.  (*Id.* at 22.)  Defendant also asks the Court to consider, in the alternative, its defenses of promissory and equitable estoppel.  (*Id.* at 23–24.)  In opposition, Plaintiff argues there are triable issues as to whether Defendant breached the Lease's Representation and Warranty Clause.  (ECF No. 58 at 10.)  Plaintiff also argues parol evidence is inadmissible because the Lease includes an integration clause.  (*Id.*)  The Court will address the contractual arguments first, and then address the equitable arguments in turn.

If a contract contains an integration clause, signaling an intention to be the "final expression" of the parties' agreement, parol evidence is inadmissible to contradict its terms.

---

[2]      As will be discussed, there is a genuine dispute as to whether Defendant breached the contact.  The Court therefore declines to evaluate the remaining elements for Plaintiff's breach of contract claim.

[3]      In addition to the foregoing arguments, Plaintiff argues in opposition if Defendant asserts the affirmative defense of mistake, the defense fails because (1) Defendant has never pleaded the defense, and thereby waived it, and (2) the evidence in this case as to whether there was a mistake is disputed.  (ECF No. 58 at 11–12.)  Defendant clarifies in its reply that it is not asserting the affirmative defense of mistake, but that there was a "mistake or imperfection" in the Lease which necessitated the introduction of parol evidence.  (ECF No. 59 at 6.)  The parol evidence argument is addressed here.

6

*Hayter Trucking, Inc. v. Shell Western E & P, Inc.*, 18 Cal. App. 4th 1, 15 (1993); *City of Manhattan Beach v. Sup. Ct.*, 13 Cal. 4th 232, 238 (1996).  The California Supreme Court has established rules to govern the use of parol evidence in determining the meaning of words in a contract, where the contract terms are otherwise "plain and unambiguous on its face."  *Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 37 (1968).  The inquiry must be "whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible."  *Id.*; *Delta Dynamics, Inc. v. Arioto*, 69 Cal. 2d 525, 528 (1968).  The Ninth Circuit has further added: "*Pacific Gas* . . . makes clear that 'extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract, but only to define the terms in the contract."  *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 777 (9th Cir. 2003).  The Ninth Circuit also stated that if a court decides the language of a contract "is fairly susceptible to either one of the two interpretations contended for" after considering the extrinsic evidence, then the evidence is admissible.  *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1015 (9th Cir. 2012).  "If, however, the court decides that the contract is not reasonably susceptible to more than one interpretation, the court can reject the assertion of ambiguity."  *Id.*

Here, the Lease contains an integration clause in § 22.3, which states the Lease "shall supersede any and all prior agreements of the parties hereto with respect to the subject matter hereof."  (ECF No. 1-1 at 37.)  Further, the Lease's plain language on property taxes provides:

> Tenant shall pay . . . [its] proportionate share of the taxes . . . assessed against the real estate included in the Leased Premises by any governmental authority . . . or other improvement or special assessment district during the Lease Term, all of which are herein collectively referred to as "Property Taxes" . . . "Property Taxes" shall include any special assessment resulting, in whole or in part, from capital improvements for the entire tax district, including Community Facilities District, of which the Shopping Center is a part and which benefit the Shopping Center . . .

> Landlord represents and warrants that there are no Property Taxes, special assessments or liens (other than the lien for current ad valorem taxes not yet due and payable) against the Leased Premises except as shown on Exhibit 7.1, and that Landlord has no actual knowledge of any planned or impending special assessments against the Leased Premises except as disclosed on Exhibit 7.1.

(ECF No. 1-1 at 14–15.)  Exhibit 7.1, entitled "Permitted Exceptions," states "TO BE

7

1    PREPARED BY LANDLORD AND APPROVED BY TENANT," but is otherwise blank.

2    (ECF No. 1-1 at 51.)

3         The extrinsic evidence Defendant asks the Court to consider is the LOI, which provides

4    general information about the landlord–tenant relationship between Defendant and Kerasotes.

5    (ECF No. 52 at 22; ECF No. 52-10 at 3.)  The LOI notes Kerasotes will be charged $5 per square

6    foot in taxes and states the "[e]stimate includes real estate property tax and California Mello

7    [Roos] tax (repayment of infrastructure tax)."  (*Id.*)  Defendant also references a draft Exhibit

8    7.1, which Defendant claims was sent to Kerasotes's attorney.  (ECF No. 52 at 22; ECF No. 52-

9    11 at 16–17.)  Draft Exhibit 7.1 contains 12 permitted exceptions, the fifth of which is "[t]he

10   terms and provisions contained in the document entitled 'Development Agreement 07-01'

11   recorded May 10, 2007 as Instrument No. 2007-089445 of Official Records."  (ECF No. 52-11 at

12   16–17.)

13        Here, the Court has evaluated Defendant's extrinsic evidence and has found it does not

14   make the language of the Lease and Exhibit 7.1 reasonably susceptible to the interpretation

15   posited by Defendant.  On the face of the Lease and Exhibit 7.1, there do not appear to be any

16   special assessments disclosed by Defendant.  Defendant also represented and warranted that

17   there were no special assessments and Defendant did not know of any impending special

18   assessments.  This Court concludes the Lease and Exhibit 7.1, taken together, is "reasonably

19   susceptible" to only one interpretation — despite Plaintiff being required to pay its proportionate

20   share of property taxes, Defendant represented and warranted there were no special assessments

21   against Plaintiff's "Leased Premises" because none were articulated in Exhibit 7.1.  The Court

22   therefore rejects Defendant's assertion of ambiguity and finds both the LOI and draft Exhibit 7.1

23   inadmissible.

24        Viewing the remainder of the facts in the light most favorable to Plaintiff and drawing all

25   reasonable inferences in its favor, the Court finds that a genuine issue of material fact exists as to

26   whether Defendant breached the Lease's Representation and Warranty Clause.  *See Anderson*,

27   477 U.S. at 251–252, 255.  The Court therefore declines to find as a matter of law that Defendant

28   did not breach the terms of the Lease.

1

*a) Promissory Estoppel*

2        Defendant contends, in the alternative, Plaintiff's claim should fail on promissory estoppel

3   grounds.  (ECF No. 52 at 23–24.)  Defendant argues the LOI gives rise to a promissory estoppel

4   claim, as it contains "a clear and unambiguous promise on the part of the tenant to pay a Mello

5   Roos 'repayment of infrastructure tax' that would total $5.00 per square foot, which is the exact

6   same CFD tax imposed today."  (*Id.* at 23.)  Defendant further asserts the LOI is admissible

7   under the collateral agreement exception to the parol evidence rule.  (ECF No. 59 at 6.)  In

8   opposition, Plaintiff argues a promissory estoppel claim cannot stand when there was a

9   "promise" for consideration, and the promise forms the basis of the written Lease.  (ECF No. 58

10  at 7.)

11       As previously discussed, when a contract contains an integration clause, parol evidence

12  may not be introduced to contradict its terms.  *Hayter Trucking, Inc.*, 18 Cal. App. 4th at 15; *City

13  of Manhattan Beach*, 13 Cal. 4th at 238.  This includes evidence of a prior or collateral

14  agreement.  Cal. Civ. Proc. Code § 1856(c).

15       Here, the LOI provides the tenant will "pay a Mello Roos 'repayment of infrastructure tax

16  that would total $5.00 per square foot."  There is no mention of any Mello Roos infrastructure

17  tax in the Lease at all.  This makes clear that the terms of the LOI and the terms of the Lease are

18  contradictory.  The Court finds the LOI inadmissible under Defendant's collateral agreement

19  argument.  The Court therefore declines to find as a matter of law that Defendant has adequately

20  pleaded a promissory estoppel defense.

21

*b) Equitable Estoppel*

22       Defendant also contends, in the alternative, Plaintiff's claim should fail on equitable

23  estoppel grounds because of Kerasotes's payment of the $5 per square foot of property tax for

24  the first year of its tenancy.  (ECF No. 52 at 24.)  Plaintiff notes in opposition Defendant has

25  made "no effort" to explain how Kerasotes's decision to pay the $5 per square foot of property

26  taxes meets any of the elements of an equitable estoppel claim.  (ECF No. 58 at 15.)

27       Here, Defendant argues Plaintiff, as the successor-in-interest to Kerasotes, is bound by

28  Kerasotes's actions; therefore, given that Kerasotes paid $5 per square foot "of property tax

9

1   payments during its first full year of tenancy . . . [Plaintiff] is bound as well." (ECF No. 52 at

2   24.) However, Defendant's basis for this argument is that Kerasotes agreed to the terms listed in

3   the LOI, which then binds Plaintiff. Again, Defendant's equitable estoppel claim is predicated

4   on the admissibility of the LOI, which the Court finds inadmissible. The Court therefore

5   declines to find as a matter of law that Defendant has adequately pleaded an equitable estoppel

6   defense.

7                    ii.      *Definition of Lease Term "applicable tax parcel"*

8                             a) *Parol Evidence*

9            Defendant next moves for summary judgment on the grounds the Tax Parcel referenced in

10   § 7.1 of the Lease as the "applicable tax parcel" or "Tax Parcel" is Plaintiff's leased area — its

11   own tax parcel. (ECF No. 52 at 24.) Defendant asks the Court to reject any assertion of

12   ambiguity in this term. (*Id.* at 26.) Defendant also contends, in the alternative, that Plaintiff's

13   claim should fail on equitable estoppel grounds. (*Id.* at 29.) Plaintiff also raises the argument

14   about the definition of "applicable tax parcel" in its own motion for summary judgment, arguing

15   Defendant "breached the terms of the Lease by reinterpreting [the applicable tax parcel] to refer

16   to only [Plaintiff's parcel], in contravention of the terms of the Lease and the parties' pre-dispute

17   conduct." (ECF No. 54 at 16.)

18          As stated previously, California's parol evidence rule only allows for the admission of

19   extrinsic evidence to interpret a contract with an integration clause if "the offered evidence is

20   relevant to prove a meaning to which the language of the instrument is reasonably susceptible."

21   *Pacific Gas*, 69 Cal.2d at 37. After considering extrinsic evidence, if a court finds the contract

22   language "is fairly susceptible to either one of the two interpretations contended for," the

23   evidence is admissible. *Skilstaf, Inc.*, 669 F.3d at 1015.

24          Here, the Court begins with the Lease's language. The provision at issue states:

25          Tenant's proportionate share of Property Taxes shall equal the product of the total
26          Property Taxes due with respect to the land and improvements included in the
            applicable tax parcel (the "Tax Parcel") multiplied by a fraction, the numerator of
27          which shall be the [gross leased area] of the Leased Premises and the denominator
            of which shall be the [gross leased area] of all improvements included in the Tax
28          Parcel.

10

(ECF No. 1-1 at 15.)  The terms "applicable tax parcel" or "Tax Parcel" are not defined anywhere in the Lease.  (*See* ECF No. 1-1.)  It is undisputed that for the first six years of the Lease, Defendant used the entire Shopping Parcel as the "applicable tax parcel" to calculate Kerasotes's and Plaintiff's share of property taxes.  (ECF No. 52 at 12; ECF No. 54 at 12, 16.)  Defendant contends this usage was in error, as it was not until 2013 that it learned Plaintiff's leased area sat on a separate tax parcel.  (ECF No. 52 at 13.)

Defendant argues the term "applicable tax parcel" only has one meaning — "the tax parcel on which [Plaintiff's] property is located" — as that is what is understood by "the clear language of the Lease."  (ECF No. 52 at 24.)  Defendant submits the testimony of its expert witness Michael DiGeronimo, in support of its proposition that it is common practice for landlords in the retail leasing industry "before a separate tax parcel is formed to allocate taxes based on the entirety of what they own."  (ECF No. 52-12 at 360.)  DiGeronimo also testified the reading of the term "applicable tax parcel" as the Shopping Center is incorrect; he stated: "if you lined up 20 different people that do retail leasing, I would be surprised if any of them said that tax parcel was something other than the [California Assessor's Parcel Number] on which the premises is located."  (*Id.* at 357–58.)  Defendant argues its interpretation is also consistent with the original projection of Plaintiff's tax obligation, as set forth in the LOI.  (ECF No. 52 at 25.)  Defendant also points to Plaintiff's filing of a tax appeal on its separate parcel as "a definitive admission by [Plaintiff] that it identifies itself as the taxpayer for its separate parcel."  (*Id.* at 28.)

Conversely, Plaintiff contends the term "applicable tax parcel" is ambiguous, and the Court should consider parol evidence in the form of the parties' pre-dispute conduct, during which Defendant calculated Kerasotes's and Plaintiff's property taxes for six years using the entire Shopping Center as the "applicable tax parcel."  (ECF No. 54 at 16; ECF No. 58 at 16–17.)  Plaintiff also argues Defendant's interpretation of Plaintiff's single parcel subject to the CFD tax "make[s] the contract absurd, unusual, unjust and inequitable" because Defendant's Vice President of Asset Management, Alesia Kempe, testified it was Defendant's position that Plaintiff should have known that when the Lease references "applicable tax parcel," it can mean either the Shopping Center or Plaintiff's separate parcel.  (ECF No. 54 at 16; ECF No. 54-16 at

11

10.)  Plaintiff further contends in its opposition that because the term is ambiguous, it should be construed against the drafter — Defendant.  (ECF No. 58 at 17.)

Based on this extrinsic evidence, the Court finds that reasonable minds could differ as to whether the term "applicable tax parcel" or "Tax Parcel" could mean either, as Defendant argues, Plaintiff's separate parcel, or, as Plaintiff argues, the entire Shopping Center.  *See Matsushita*, 475 U.S. at 586.  While the preliminary question of whether ambiguity exists in a contract term is a question of law that may be resolved summarily by a court, summary judgment cannot be granted if an inquiry into the state of mind or intent of the contracting parties is required to resolve the ambiguity.  *U.S. v. Sacramento Municipality Utility Dist.*, 652 F.2d 1341, 1343–44 (9th Cir. 1981); *Jewel Companies, Inc. v. Pay Less Drug Stores Northwest, Inc.*, 741 F.2d 1555 (9th Cir. 1984) (issue of material fact precluding summary judgment on the question of whether the merger agreement between the first corporation and third corporation was exclusive); *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 943 (issue of material fact precluding summary judgment as to whether the former employee's symptoms fell under the ambiguous plan terms "mental illness" or "functional nervous disorder"); *JBL Enterprises, Inc. v. Jhirmack Enterprises, Inc.*, 519 F. Supp. 1084 (N.D. Cal. 1981), *aff'd on the merits,* 698 F.2d 1011 (9th Cir. 1983) (issue of material fact precluding summary judgment as to whether an agreement that gave a distributor the exclusive right to distribute the corporation's product to the over-the-counter market violated existing distributor agreements).  In the instant case, there remains a triable issue of material fact as to what each party intended with the term "applicable tax parcel" or "Tax Parcel."  The Court therefore rejects both parties' arguments in favor of summary judgment and declines to find as a matter of law that Defendant did or did not breach the terms of the Lease.

### b)  Equitable Estoppel

Defendant contends, in the alternative, Plaintiff's claim should fail on equitable estoppel grounds because Plaintiff's "extensive conduct . . . has affirmed that it considers its separate tax parcel should be used," such as accepting a tax credit from Defendant and using its own separate parcel for real estate taxes.  (ECF No. 52 at 29.)  In opposition, Plaintiff notes Defendant does

1    not identify what representation or concealment of a material fact was intended to induce

2    Defendant's reliance, nor is there evidence of detrimental reliance.  (ECF No. 58 at 24–25.)

3          A party asserting an equitable estoppel claim must prove four elements: (1) the party to be

4    estopped must have been apprised of the facts; (2) the party to be estopped must have intended

5    for its conduct to be acted on, or must have acted so the party asserting estoppel had a right to

6    believe it was so intended; (3) the party asserting estoppel must have been ignorant of the true

7    facts; and (4) the party asserting estoppel must have relief on the conduct to its injury.  *City of*

8    *Long Beach v. Mansell*, 3 Cal.3d 462, 489 (1970); *County of Sonoma v. Rex*, 231 Cal. App. 3d

9    1289, 1297 (1991).

10          Here, Defendant argues Plaintiff's acceptance of a tax credit from Defendant and usage of

11   its own separate parcel for real estate taxes indicate that Plaintiff was "apprised of the fact" its

12   own separate parcel should be used as the "applicable tax parcel" in the calculation of its share

13   of property taxes.  However, as established previously, the definition of the term "applicable tax

14   parcel" is in dispute and is therefore a triable issue of material fact.  The Court therefore declines

15   to find as a matter of law that Defendant has adequately pleaded an equitable estoppel defense.

16                         *iii.*          *Voluntary Payment Doctrine*

17          Finally, Defendant moves for summary judgment on the grounds that Plaintiff waived its

18   breach of contract claim by waiting 18 months to sue.  (ECF No. 52 at 29–30.)  Defendant

19   asserts the case law on the voluntary payment doctrine (1) does not allow Plaintiff to make any

20   tax payments "under protest" unless Plaintiff is also under duress, and (2) prohibits Plaintiff

21   from paying the CFD taxes at issue and then delaying commencement of the action by 18

22   months.  (*Id.* at 30–31.)  Defendant maintains its "Fifth Affirmative Defense included the

23   defense of waiver," and the voluntary payment doctrine is a form of waiver.  (ECF No. 59 at 11–

24   12.)  In opposition, Plaintiff contends Defendant cannot raise the voluntary payment doctrine as

25   an affirmative defense because (1) it is a defense that was never pleaded and is therefore waived,

26   and (2) the facts do not support application of the doctrine because the payments were made

27   "under protest."  (ECF No. 58 at 25.)

28   / / /

1    The right of a taxpayer to recover taxes improperly collected depends on restitution

2    principles.  *See Southern Service Co. v. Los Angeles*, 15 Cal. 2d 1, 7 (1940); *Flynn v. City and*

3    *County of San Francisco*, 18 Cal. 2d 210, 216 (1941); Rest.3d, Restitution & Unjust Enrichment

4    § 19.  The basic rule is there is no recovery where taxes are voluntarily paid, without compulsion

5    or coercion.  *Id.*  The California Supreme Court has clarified that voluntary payment made with

6    full knowledge of the facts cannot be recovered "merely because the party at the time of

7    payment was ignorant or mistook the law as to his liability."  *Brumagim v. Tillinghast*, 18 Cal.

8    265, 265–66 (1861).  The court specified if a party makes a payment under protest, that alone

9    does not entitle the party to recovery.  *Id.*  Payment must have been made under duress or

10   coercion, or undue advantage must have been taken of the party's situation.  *Id.*  In order to find

11   compulsion or coercion, there must be actual or threatened exercise of power possessed or

12   supposed to be possessed by the party demanding payment, over the party making the payment.

13   *Id.*  The party making the payment must have "no other means of immediate relief than by

14   advancing the money."  *Id.*

15        Here, it is undisputed Plaintiff submitted its CFD tax payments to Defendant, claiming it

16   was doing so "under protest" or while "reserving its rights."  (ECF No. 52 at 30; ECF No. 58 at

17   25–26.)  Both parties acknowledge Plaintiff's Vice President of Leasing, Ron Herman, testified

18   the payments were made under duress.  (ECF No. 52-2 at 19; ECF No. 58-1 at 30.)  Mr. Herman

19   testified the submission of the payments under protest were "to cure an alleged default."  (ECF

20   No. 52-12 at 304).  He stated: "when the landlord sends you a potential default notice, yes, it is

21   under duress."  (*Id.*)  When asked if Plaintiff has other evidence to show it paid under duress,

22   Mr. Herman stated "no."  (*Id.*)

23        Taking Plaintiff's evidence as true and drawing all reasonable inferences in its favor, the

24   Court finds that reasonable minds could differ as to whether a potential default notice presented

25   a situation to Plaintiff where it had "no other means of immediate relief than by advancing the

26   money."  *See Anderson*, 477 U.S. at 251–252, 255; *Brumagim*, 18 Cal. at 265–66.  As Plaintiff

27   has raised a triable issue of material fact, the Court therefore declines to find as a matter of law

28   that Defendant has adequately pleaded a voluntary payment defense.

1    Given the foregoing, the Court DENIES both Defendant and Plaintiff's motions for

2    summary judgment as to Plaintiff's breach of contract claim.

3                    B.        Breach of the Implied Covenant of Good Faith and Fair Dealing

4    Defendant moves for summary judgment as to this claim on the grounds that its conduct

5    conformed with the Lease's explicit terms and the bargained-for benefits of the Lease.  (ECF No.

6    52 at 32–34.)  Defendant argues (1) the Lease explicitly allows it to levy property taxes,

7    including CFD taxes, on Plaintiff, and (2) the CFD taxes assessed on Plaintiff are consistent with

8    the LOI terms of "repayment of infrastructure tax" at $5 per square foot.  (*Id.* at 33–34.)

9    Defendant maintains Kerasotes knew about the Development Agreement and future CFD taxes,

10   but it was Kerasotes's idea to leave Exhibit 7.1 blank as it was "deemed unimportant."  (*Id.*)

11   Plaintiff also moves for summary judgment on this claim, arguing Defendant is "using its

12   discretionary power . . . to unfairly frustrate the rights of [Plaintiff] under the Lease by imposing

13   a disproportionate share of the CFD assessments on [Plaintiff]," which frustrates Plaintiff's right

14   to pay the "proportionate" share of CFD assessments and violates the covenant of good faith and

15   fair dealing.  (ECF No. 54 at 17; ECF No. 58 at 26.)

16    "There is an implied covenant of good faith and fair dealing in every contract that neither

17   party will do anything which will injure the right of the other to receive the benefits of the

18   agreement.'"  *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (2000).  The

19   covenant cannot "impose any substantive duties or limits on the contracting parties beyond those

20   incorporated in the specific terms of the agreement."  *Moreau v. Air France*, 356 F.3d 942, 954

21   (9th Cir. 2004) (citing *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349–52 (2000)).  To allege

22   breach of the covenant, it is not necessary to first allege breach of a specific provision in the

23   contract.  *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th

24   342, 373 (1992).  The California Supreme Court has stated that "[a] party violates the covenant

25   if it subjectively lacks belief in the validity of its act or if its conduct is objectively

26   unreasonable."  *Id.* at 372.  "In the case of a discretionary power," the court suggests the party

27   with the power use it "for any purpose within the reasonable contemplation of the parties at the

28   time of formation — to capture opportunities that were preserved upon entering the contract,

15

1   interpreted objectively." *Id.*

2          Here, it is undisputed the Lease contains an explicit good faith and fair dealing clause.

3   (ECF No. 52-2 at 22; ECF No. 54-1 at 2.)  Defendant's argument that this clause was not

4   breached is based on its assertion that the CFD taxes were calculated correctly, based on its

5   interpretation of "applicable tax parcel," which is Plaintiff's separate leased parcel.  However, as

6   determined previously, reasonable minds could differ as to the meaning of "applicable tax

7   parcel" or "Tax Parcel" and what the parties intended at the time of contracting.  Therefore, it

8   remains a triable issue of material fact as to whether using the entire Shopping Center, as

9   Plaintiff contends, or Plaintiff's separate parcel, as Defendant contends, is "objectively

10  unreasonable" or "within the reasonable contemplation of the parties at the time of formation."

11  *Carma Developers (Cal.), Inc.*, 2 Cal. 4th at 373.

12         Accordingly, the Court DENIES both Defendant and Plaintiff's motions for summary

13  judgment as to Plaintiff's breach of the implied covenant of good faith and fair dealing claim.

14                   C.      Declaratory Relief

15         Defendant moves for summary judgment on Plaintiff's claim for declaratory relief,

16  arguing that such relief is "unnecessary and duplicative," and it is barred because a

17  determination of Plaintiff's breach of contract claim will resolve the controversy at issue.  (ECF

18  No. 52 at 34–35.)  Plaintiff moves for summary judgment on the same claim, asserting that "it is

19  in the interest of both parties and judicial economy to declare the appropriate interpretation of

20  the Lease with respect to [Plaintiff's] allocation of future CFD assessments throughout the

21  duration of the Lease."  (ECF No. 54 at 19–20.)

22         Federal Rule of Civil Procedure 57 provides: "The existence of another adequate remedy

23  does not preclude a declaratory judgment that is otherwise appropriate."  The U.S. Supreme

24  Court has held "that district courts possess discretion in determining whether and when to

25  entertain an action" for declaratory relief, but it has not delineated the outer boundaries of this

26  discretion in other cases in which there are no parallel state proceedings.  *See Wilton v. Seven

27  Falls Co.*, 515 U.S. 277 (1995).  "Various courts have held . . . that, where determinations of a

28  breach of contract claim will resolve any question regarding interpretation of the contract, there

16

is no need for declaratory relief, and dismissal of a companion declaratory relief claim is appropriate." *Vascular Imaging Professionals, Inc. v. Digirad Corp.*, 401 F. Supp. 3d 1005, 1010 (S.D. Cal. 2019) (citing *Streamcast Networks, Inc. v. IBIS LLC*, 2006 WL 5720345, at * 3– 4 (C.D. Cal. 2006)). "However, declaratory relief is appropriate where a breach of contract claim will not settle all of the contractual issues concerning which plaintiff seeks declaratory relief." *Id.* (internal citations omitted).

Here, Plaintiff's breach of contract claim seeks monetary damages, while Plaintiff's declaratory relief claim seeks a declaration that the "Tax Parcel" refers to the entire Shopping Center and the apportionment of taxes under the Lease is determined by reference to the "Tax Parcel." (ECF No. 1 at 7–8.) Plaintiff's breach of contract claim "seeks damage to redress past wrongs, whereas the declaratory relief claim goes one step further," seeking a declaration that Plaintiff's future CFD tax liability will be calculated using the entire Shopping Center as the "Tax Parcel." *Vascular Imaging Professionals, Inc.*, 401 F. Supp. 3d at 1010–11. Plaintiff's declaratory relief claim seeks a different form of relief from its breach of contract claim, and thus the Court cannot conclude the claims are duplicative.

Accordingly, the Court DENIES both Defendant and Plaintiff's motions for summary judgment as to Plaintiff's claim for declaratory relief.

### D.   Constructive Trust and Unjust Enrichment

Defendant moves for summary judgment on Plaintiff's constructive trust and unjust enrichment claim, arguing it "wholly duplicates [Plaintiff's] breach of contract claim." (ECF No. 52 at 35.) In opposition, Plaintiff asserts Defendant "wrongfully acquired [its] CFD assessment payments, which results in the imposition of a constructive trust, and the overpayments must be returned to [Plaintiff]." (ECF No. 58 at 28.)

"A cause of action for constructive trust is not based on the establishment of a trust, but consists of fraud, breach of fiduciary duty, or [an]other act which entitles the plaintiff to some relief." *Fredianelli v. Jenkins*, 931 F. Supp. 2d 1001, 1024 (N.D. Cal 2013) (citing *Michaelian v. State Comp. Ins. Fund*, 50 Cal. App. 4th 1093, 1114 (1996). In asserting a wrongful act, plaintiff must show the acquisition of property was wrongful and keeping the property would

17

1    constitute unjust enrichment.  *Calistoga Civic Club v. City of Calistoga*, 143 Cal. App. 3d 111,

2    116 (1983).  Requirements to plead a constructive trust claim are "(1) facts constituting the

3    underlying cause of action, and (2) the specific identifiable property to which defendant has

4    title."  *Michaelian*, 50 Cal. App. 4th at 1114.

5          Here, Plaintiff did not clearly plead a "wrongful act" in its Complaint or opposition to

6    Defendant's motion for summary judgment that entitles Plaintiff to relief.  The Court could

7    assume the "wrongful act" is Plaintiff's breach of contract claim, given that Plaintiff has argued

8    in its breach of contract claim that Defendant's usage of Plaintiff's separate parcel to calculate its

9    CFD taxes is incorrect.  However, Plaintiff did not explicitly plead this in its constructive trust

10   and unjust enrichment claim, nor did Plaintiff submit further evidence to oppose Defendant's

11   motion.

12         Accordingly, the Court GRANTS Defendant's motion for summary judgment as to

13   Plaintiff's constructive trust and unjust enrichment claim.

14                E.    Attorneys' Fees

15         In Defendant's motion for summary judgment, Defendant notes, per § 22.4 of the Lease,

16   the prevailing party is entitled to an award of reasonable attorneys' fees and costs.  (ECF No. 52

17   at 35.)  As the prevailing party of this suit has yet to be decided, the Court defers its ruling on

18   attorneys' fees and costs.

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1    **IV.    CONCLUSION**

2        For the reasons set forth above, Plaintiff's Motion for Summary Judgment (ECF No. 54)

3   is DENIED and Defendant's Motion for Summary Judgment (ECF No. 52) is hereby GRANTED

4   in part and DENIED in part as follows:

5        1.   Defendant's Motion for Summary Judgment as to Plaintiff's breach of contract claim

6             is DENIED;

7        2.   Defendant's Motion for Summary Judgment as to Plaintiff's breach of the covenant of

8             good faith and fair dealing is DENIED;

9        3.   Defendant's Motion for Summary Judgment as to Plaintiff's declaratory relief claim is

10            DENIED;

11       4.   Defendant's Motion for Summary Judgment as to Plaintiff's constructive trust and

12            unjust enrichment claim is GRANTED; and

13       5.   The parties are hereby ordered to file a Joint Notice of Trial Readiness within thirty

14            (30) days of electronic filing of this Order indicating their readiness to proceed to trial

15            and proposing trial dates.

16       IT IS SO ORDERED.

17   DATED:  November 2, 2020

18

19                                                          _____
                                                            Troy L. Nunley
20                                                          United States District Judge

21

22

23

24

25

26

27

28