MANATT, PHELPS & PHILLIPS, LLP
ROBERT H. PLATT (Bar No. CA 108533)
E-mail: rplatt@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

MANATT, PHELPS & PHILLIPS, LLP
CHRISTIAN E. BAKER (Bar No. CA 247006)
E-mail: cbaker@manatt.com
THOMAS R. WORGER (Bar No. CA 311312)
E-mail: tworger@manatt.com
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Telephone: (415) 291-7400
Facsimile: (415) 291-7474

Attorneys for Plaintiff
AMERICAN MULTI-CINEMA, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| AMERICAN MULTI-CINEMA, INC., a Missouri corporation,<br><br>Plaintiff,<br><br>v.<br><br>MANTECA LIFESTYLE CENTER, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. 2:16-CV-01066-TLN-KJN<br><br>**DECLARATION OF GARY GREENFIELD IN SUPPORT OF THE REPLY OF PLAINTIFF AMERICAN MULTI-CINEMA, INC. TO MANTECA LIFESTYLE CENTER'S OPPOSITION**<br><br>Trial Date: July 26, 2022<br>Time: 9:00 a.m. |

I, Gary Greenfield, declare:

1. I am providing this Reply Declaration in support of the Reply of Plaintiff American Multi-Cinema, Inc.'s ("AMC") to Manteca Lifestyle Center's ("Manteca") Opposition To AMC's Motion For Attorneys' Fees And Costs (the "Opposition). I have personal knowledge of the matters set forth herein and, if called upon to testify, I could and would competently testify thereto. I have previously filed a Declaration (the "Initial Declaration") in support of AMC's Motion for Attorneys' Fees and Costs (the "Motion").[1]

2. I am responding to various statements and arguments made by Manteca in its Opposition regarding the rates sought by AMC, Manatt's staffing and management of the case, and block-billing. As indicated in my Initial Declaration, I have provided analyses of legal fees in hundreds of cases during the course of my work, and I have addressed each of these areas many times as part of my analyses.

3. I will endeavor not to reiterate points from my Initial Declaration other than when necessary to respond to Defendant Manteca's Opposition.

4. Before responding to Manteca's arguments, it is necessary to correct two points made by Manteca which are relevant to the rate analysis and other issues raised in the Opposition.

5. First, Manteca asserts that the amount at stake in the litigation was the judgment amount of $1,943,504.04, which is less than the fees and costs of $2,340,660.75 AMC seeks to recover. That is not correct. It is my understanding that, by prevailing in the litigation, AMC has avoided having to pay Manteca an additional approximately $9.2 million over the remaining term of the Lease.[2] The amount at issue was therefore over $11.1 million, or more than five times the amount of the fees and costs that Manatt now seeks.[3]

6. Second, throughout the Memorandum of Points and Authorities in support of its Opposition ("Opposition Memorandum"), Manteca refers to the Manatt discounted rates, but without considering the amounts written off during the case. The amounts written off must be

---

[1] Capitalized terms have the same meaning in this Reply Declaration as in my Initial Declaration.
[2] This calculation includes four five-year option periods AMC has under the Lease.
[3] Nevertheless, even if the fees billed and sought had in fact been more than the amount at stake, that would not make either the fees or rates necessarily unreasonable, although it would be a relevant consideration. In any event, that is not the case here.

DECLARATION OF GARY GREENFIELD
ISO REPLY TO OPPOSITION

taken into account, however, to arrive at the effective billing rate for the case. Thus, Manteca repeatedly refers to Mr. Platt's rate as $1,260, but that was his effective billing rate only for one year (2023), while his overall effective billing rate for the entire case was $1,107. Attached hereto as Exhibit 1 is a Biller Summary summarizing the hours, rates and fees billed by each Manatt biller, reflecting the effective billing rates for each of the Manatt billers.

**The Rates Billed by Manatt**

7. The Defendant makes the following arguments in its Opposition regarding the rates billed by Manatt:

(a) That the rates charged by Manatt are excessive under the test in cases attempting to identify the prevailing rates of comparable lawyers performing comparable work in the market (the "prevailing rate test");

(b) That, under the prevailing rate test, the rates of firms based in Sacramento are to be applied; and

(c) That the Manatt rates are higher than the rates of Sacramento-based firms identified by the two lawyers who filed declarations in support of Manteca's Opposition.

8. Essentially, Manteca argues that AMC should not be compensated based on the rates AMC was billed, but rather based on rates of Sacramento-based law firms. There are a number of problems with Manteca's arguments.

9. First, as indicated in my Initial Declaration, *neither* party here chose Sacramento-based counsel. Instead, both parties chose counsel with main offices located elsewhere. AMC made that decision based on Manatt's expertise and experience with theater leasing and tax issues, AMC's prior successful history with Manatt and what was at stake in the litigation.[4] Manteca chose counsel based in New Jersey, presumably for similar reasons.

10. Moreover, it is my understanding that Manteca retained Latham & Watkins LLP ("Latham") and Orrick, Herrington & Sutcliffe LLP ("Orrick") for the Mello Roos bond issuance for the development of the shopping center. Declaration of Robert H. Platt in Support of AMC's Reply ("Reply Platt Declaration"), ¶¶ 8-12. Latham and Orrick not only are not based in

---
[4] These are all factors to be considered under Local Rule 293(c) and the case law.

1   Sacramento, they have rates that are as high or higher than Manatt's.[5] There are Sacramento-based firms that hold themselves out as having experience with the Mello Roos Act, but Manteca instead chose Latham and Orrick--higher-priced, non-Sacramento based lawyers.

11. Further, as discussed in my Initial Declaration, this is not the type of case for which the "prevailing rate test" was developed. That test came from, and is primarily used in, cases where the fees sought have not been paid by the client during the course of the case. In this case, the rates that Manatt charged AMC were paid by AMC during the case. Since it was paying the fees, AMC had a substantial interest in keeping its fees as low as possible. Given that context, AMC's decision to retain lawyers based outside Sacramento and pay their regular (although discounted) rates was completely reasonable. Thus, there is no basis in this case to attempt to arrive at hypothetical rates that should have been charged, or that would have been charged, by a Sacramento firm, if one had been retained. The appropriate rates to apply are the actual, effective rates billed and paid.[6]

12. In short, AMC's decision to retain Manatt was a reasonable one, which, at a minimum, creates a presumption that the rates actually paid were reasonable and were the appropriate rates to apply.

13. Anticipating that Manteca would seek to use the prevailing rate test to reduce the fees awarded to AMC, AMC addressed that test in its Motion, and I discussed it in my Initial Declaration. As part of my analysis, I analyzed rates charged by firms comparable to Manatt who have Sacramento offices, based on the rates collected from those firms in the Peer Monitor rate database.[7]

---

[5] I have been involved in a number of cases where Latham's and Orrick's fees have been at issue and am familiar with their rates based on that work and the availability of their rates in publicly available sources of information, such as court filings.
[6] Defendant does not appear to argue that Manatt's rates are unreasonable, other than that they are higher than the hypothetical Sacramento billing rates Manteca claims should be applied and that this was a simple case and did not justify hiring Manatt. That latter argument is addressed by counsel in AMC's Reply.
[7] The Peer Monitor rate data is based on the actual rates collected from the firms in its database and is a typical type of rate data relied upon by experts in analysis of the reasonableness of legal fees in litigation.

14. In response, in its Opposition, Manteca provides the Declarations of Stephen Boutin ("Boutin Declaration") and John Lassner ("Lassner Declaration") to attempt to identify the "market rates" in Sacramento for comparable lawyers doing comparable work.

15. Mr. Boutin compares his rate and the rates of various levels of lawyers at his firm to the billers at Manatt. Mr. Boutin then provides his understanding of the rates of one other lawyer (besides Mr. Lassner) and of one other firm in Sacramento (Downey Brand), but he does not indicate the basis for that understanding.[8] Mr. Boutin also notes rates discussed in various court decisions in the Eastern District. However, even if the few examples he includes provided an accurate view of rates among Sacramento-based firms, Mr. Boutin does not indicate that any of the rates he discusses are for work comparable to the work in this litigation, which is an element of the prevailing rate test.[9]

16. In the Lassner Declaration, Mr. Lassner provides information about his own rate and indicates that he is an experienced and respected real estate lawyer. He indicates that he focuses "on real property in business mattes and disputes." (Lassner Decl., ¶ 5.) He does not state that he handles real estate litigation (as a lawyer, one can help clients resolve "disputes" without handling litigation), nor does he say he handles issues related to real estate tax matters in general or the Mello-Roos Act.

17. In short, the only rate information that Manteca provides in its Opposition, other than what Mr. Boutin and Mr. Lassner may have been told about the rates of other firms in Sacramento and the cases Mr. Boutin refers to, are the rates billed by Mr. Boutin's and Mr. Lassner's firms. There is no information about rates charged by lawyers based in Sacramento doing work comparable to the work undertaken by Manatt in the underlying litigation.

---

[8] Mr. Boutin bases part of his opinion about one of the firms whose rates he includes on how the firm "markets itself," namely as "Sacramento's Most Awarded Real Estate Attorneys." (Boutin Decl., ¶ 12.) How a firm "markets itself" does not provide a basis for use of their rates in a rate analysis.

[9] Mr. Boutin does refer to lawyers handling "real estate litigation" which is how he apparently classifies this case, but this case was not straightforward real estate litigation, but rather required knowledge and application of tax issues, the Mello-Roos Act and the related regulations.

**Staffing and management of the case**

18. Manteca asserts that Manatt essentially overbilled the case by having twenty-five billers on the case and that there should have been no more than four billers on the case.

19. First, the number of billers on a case does not, in and of itself, reflect overbilling—it depends entirely on how the billers were utilized. Moreover, this case has now covered a period of more than eight years so it is hardly surprising that there would be a number of billers involved over that period of time.

20. However, because of Defendant's assertion, I analyzed the hours billed by the lawyers over the course of the case. That analysis is set forth both on the Biller Summary attached here to as Exhibit 1 and an analysis of the hours billed by each biller for each year of the litigation (Exhibit 2 attached hereto). As the Exhibits and Manatt invoices indicate, until trial preparation started in February, 2022, the case was handled primarily by four lawyers. Mr. Platt, the senior litigator who supervised the case, billed a relatively small number of hours until trial preparation commenced. Mr. Rheinheimer was the primary litigator in terms of hours worked through 2018. Mr. Baker replaced Mr. Rheinheimer in 2020.[10] Mr. Steere, a real estate transactional and tax partner, has provided ongoing tax and real estate advice throughout the duration of the matter. (See Declaration of Robert Platt ("Platt Declaration"), ¶ 12.) The five lawyers who primarily handled the case from its inception in 2015 through trial billed 99 percent of both the hours and the fees billed by lawyers on the case. See Exhibit 1.[11] Of the remaining seven lawyers on the case, none billed over 11 hours and four billed less than one hour. *Id.*

---

[10] Mr. Rheinheimer left the firm in 2019 and was replaced by Mr. Baker who only billed 35 hours until trial preparation started in 2022. See Exhibit 2. The fact that a lawyer leaves a firm and must be replaced by another does not reflect inefficiency. It is a frequent occurrence, particularly in cases that cover several years. Defendant argues that Manatt inappropriately charged time for Mr. Baker to get up to speed on the case. Other than possibly in one telephone call between Mr. Baker and Mr. Rheinheimer, I see no evidence of the billing of "get up to speed" time, and Mr. Platt indicates in his Supplemental that he did not bill that type of time to the client. (Reply Platt Declaration, ¶ 4.)

[11] It is common in commercial litigation for there to be projects which are cost-effectively worked on by people who are not otherwise heavily involved in the case. For example, it is often more cost-effective to have an expert provide a few hours of advice than have someone who is heavily involved in the case do research.

21. In short, the manner in which Manatt managed this case reflects very lean staffing for a case of this complexity that covers eight plus years and, contrary to Manteca's argument, reflects very careful and cost-effective management of the case.

22. Defendant further asserts "the vast majority of the time which the Manatt firm devoted to the case up to the trial was by two attorneys who Mr. Platt clearly did not supervise." (Opposition Memorandum, p. 7.) However, that assertion is belied by the fact that AMC won at trial, so clearly Mr. Platt provided the appropriate amount of supervision.[12]

23. Moreover, while it is true that Mr. Platt billed very few hours on the case until February, 2022 (when it became apparent that the case was not going to settle and that trial preparation needed to commence), given that his rate was the highest among the lawyers on the case and the ultimate result achieved, the fact that Mr. Platt billed only a few hours for the first seven years of the case is a sign of cost-effective management, not the opposite.

**Block-billing**

24. Manteca seeks to make an enormous deduction for "block-billing." Block-billing is the practice of combining the time for more than one task or activity into one time entry, rather than indicating the time for each separate task. Block-billing is still the most common billing format today in commercial litigation.

25. The Opposition Memorandum states, "Block billing is not permitted …" (Opposition Memorandum, p. 9). That is simply not a correct statement of the law. The courts have universally stated that there is nothing per se inappropriate in block-billing. While there are cases that have made a deduction for block-billing in the circumstances of those cases, again, as with the discussion of the rates billed above, those cases do not typically involve the fees of a party which has been paying the fees on an ongoing basis during the case.

26. Moreover, first Manteca argues that a 25% deduction is warranted (Opposition Memorandum, p. 9, l. 13) and then that a 30% deduction is warranted (*Id.*, l. 26). In any event,

---

[12] Further, Mr. Platt does not record or bill his time for intra-office conferences, so much of his "supervision" time would not appear in the bills. (Reply Platt Decl., ¶ 4.)

DECLARATION OF GARY GREENFIELD
ISO REPLY TO OPPOSITION

however, this case is not similar to the cases cited by Manteca, and there is no basis for a block-billing deduction.

**Manatt Supporting Declarations**

27. Manteca makes the argument that the time of all the major billers on the case, other than Mr. Platt, should be excluded because they do not provide declarations in support of the Motion.

28. I have been involved as an expert witness on motions for attorneys' fees, both for parties seeking fees and parties opposing fee requests, on hundreds of occasions.

29. It is not the norm to supply declarations of all the billers whose time is sought on a motion for fees, or even of the major billers. Other than in a case where there were only a few billers involved, I can recall few, if any, cases where all the major billers provided declarations to support the fees requested. The approach is most often precisely that followed by Manatt here, namely the supervising lawyer provides the invoices and a description of the backgrounds of the main billers.

[SIGNATURE ON FOLLOWING PAGE]

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct, and that I executed this Declaration on September 5, 2023, in Oakland, California.

_____
Gary Greenfield

402390308.1

- 9 -

DECLARATION OF GARY GREENFIELD
ISO REPLY TO OPPOSITION

Manatt, Phelps &
Phillips, LLP
Attorneys at Law
Los Angeles

| | |
|---|---|
| 1 | Biller Summary |
| 2 | Hours Billed Per Year |